NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13823
SJC-13835


COMMONWEALTH  vs.  JOSE SOLIS.

COMMONWEALTH  vs.  MICHAEL DIAZ.



Suffolk.      January 5, 2026. - August 12, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Cellular Telephone.  Constitutional Law, Search and seizure.
Search and Seizure, Warrant.  Practice, Criminal, Warrant,
Motion to suppress.  Time.




Indictments found and returned in the Superior Court
Department on June 26, 2023.

A pretrial motion to suppress evidence was heard by Michael
J. Pineault, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Gaziano, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.


Indictments found and returned in the Superior Court
Department on December 19, 2019.

A pretrial motion to suppress evidence was heard by Sarah
Weyland Ellis, J.

An application for leave to prosecute an interlocutory appeal was allowed by Lowy, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. After review by the Appeals Court, 105 Mass. App. Ct. 809 (2025), the Supreme Judicial Court granted leave to obtain further appellate review.

Brooke Hartley & Cailin M. Campbell, Assistant District Attorneys, for the Commonwealth.

Matthew Spurlock, Committee for Public Counsel Servies, for Jose Solis.

George F. Ohlson, Jr., for Michael Diaz.

The following submitted briefs for amici curiae:

David E. Sullivan, District Attorney, & Nicholas Atallah, Assistant District Attorney, for district attorney for the northwestern district.

Christine A. Monta & Andrew Eslich, of the District of Columbia, Jessie J. Rossman, Jennifer M. Herrmann, & Nathan Freed Wessler for American Civil Liberties Union of Massachusetts, Inc., & others.

Eric R. Atstupenas for Massachusetts Chiefs of Police Association, Inc.

Michelle Menken & Hannah Taylor for Victor Arrington.

GEORGES, J. These appeals[1] require us to decide whether delays of approximately four months between the lawful seizures of cell phones incident to arrest and subsequent applications for warrants to search their contents rendered the continued seizures of those devices unreasonable under art. 14 of the Massachusetts Declaration of Rights.

---

[1] Although the two appeals are not consolidated and were argued separately at oral argument, they are addressed in a single opinion because they raise essentially identical questions of law.

The defendants, Jose Solis and Michael Diaz, both filed motions to suppress the evidence obtained from their cell phones, arguing that the police unreasonably delayed seeking search warrants. Superior Court judges allowed the motions, relying on Commonwealth v. White, 475 Mass. 583, 595 (2016), where we concluded that a sixty-eight day delay in obtaining a warrant to search a cell phone was unreasonable under the circumstances presented there.

The delays here, 109 days in Solis's case[2] and 123 days in Diaz's case, exceeded the delay in White. But White rejected any bright-line temporal rule. White, 475 Mass. at 593. Instead, it requires courts to balance the defendant's possessory interest in the seized device against the Commonwealth's justification for its continued retention under the totality of the circumstances. Id. at 593-594.

Applying the totality of the circumstances analysis set out in White, we conclude that the delays in these cases did not render the continued seizures of the cell phones unreasonable. See White, 475 Mass. at 593-594, citing United States v. Place, 462 U.S. 696, 703 (1983). See also Commonwealth v. Cruzado, 480

---

[2] Although the motion judge and the parties calculate the delay as 110 days by counting the date of the seizure itself, the relevant inquiry concerns the days following the seizure. See White, 475 Mass. at 585-586. The one-day discrepancy does not affect our conclusion.

Mass. 275, 283-284 (2018) (applying standard from White to cell phone seized under exigent circumstances). The orders allowing the motions to suppress are reversed.[3]

Background. We summarize the facts as found by the motion judges, supplemented by undisputed record evidence consistent with those findings. See Commonwealth v. Robinson, 497 Mass. 156, 157 (2026).

1. Solis. a. Facts. On March 24, 2023, Chelsea police responded to a 911 call made by Charlie,[4] a thirteen year old who reported that he had been sexually assaulted by a clerk at a convenience store in Chelsea. After officers arrived outside the store, Charlie identified Solis as the clerk who had assaulted him.

Charlie told responding officers that Solis had forced him to engage in sexual acts on at least three occasions while at the store, including once in the store's basement. Charlie further reported that during one of these incidents, Solis

---

[3] We acknowledge the amicus briefs submitted in support of the defendants by the American Civil Liberties Union of Massachusetts, Inc., the Roderick & Solange MacArthur Justice Center, and the American Civil Liberties Union, Inc.; and Victor Arrington. We also acknowledge the amicus briefs submitted in support of the Commonwealth by the district attorney for the northwestern district. We further acknowledge the amicus brief submitted in support of the Commonwealth in its appeal from the allowance of Diaz's motion to suppress by the Massachusetts Chiefs of Police Association, Inc.

[4] A pseudonym.

pulled out a cell phone, pointed it at Charlie's exposed genitals, and appeared to take a photograph. Charlie also stated that Solis had threatened him with a firearm during one of the earlier sexual assaults. After obtaining permission to search the store, officers observed a futon and "bluish blanket" in the basement, consistent with Charlie's description of where he was assaulted.

Later that same day, Solis was placed under arrest for, among other offenses, posing or exhibiting a child in a state of nudity. See G. L. c. 272, § 29A (a). Immediately prior to his arrest, Solis handed the police his cell phone (a blue Nokia "smart" cell phone in a black case) upon their request. Sergeant Detective Anthony D'Alba of the Chelsea police department, the supervising detective on call, had recommended that the police seize Solis's cell phone because it was "evidence that . . . would be shown to the reported victim" for identification at trial, and because the cell phone might contain digital evidence.

Approximately three weeks after the seizure of Solis's cell phone, Charlie reported during a forensic interview[5] that Solis had used a gray or black Samsung cell phone to photograph his

---

[5] A forensic interview is, as explained by D'Alba, a type of interview that is designed to be "nonsuggestive and nontraumatic for the child."

exposed genitals. Around that time, D'Alba began preparing a warrant application to search the cell phone for evidence of ownership and the alleged picture.

In the intervening time between Solis's arrest and D'Alba's submission of the warrant application, D'Alba testified in two evidentiary hearings, assisted in preparing four or five Superior Court trials and two District Court matters, participated in offsite trainings for a total of eight days, and was unable to work for approximately eight or nine days due to a serious respiratory infection.

On July 11, 2023, 109 days after the seizure of the cell phone, D'Alba applied for a warrant to search its contents and submitted an eighteen-page affidavit in support. The warrant issued that same day. A subsequent search uncovered a photograph consistent with Charlie's description.

b. Procedural history. On March 27, 2023, a criminal complaint issued in the Chelsea Division of the District Court Department (Chelsea District Court), charging Solis with two counts of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B, and one count of assault by means of a dangerous weapon, G. L. c. 265, § 15B (b). Two days later, an additional criminal complaint issued charging Solis with one count of aggravated assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B 1/2.

On June 26, 2023, a grand jury returned indictments charging Solis with one count of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B; one count of posing or exhibiting a child in a state of nudity, G. L. c. 272, § 29A (a); one count of open and gross lewdness and lascivious behavior, G. L. c. 272, § 16; and one count of rape of a child between the ages of twelve and sixteen, aggravated by a more than ten-year age difference, G. L. c. 265, § 23A (b).[6]

In February 2024, Solis moved to suppress evidence obtained from his cell phone.  Following an evidentiary hearing, a Superior Court judge (Solis's motion judge) allowed the motion, concluding that the 109-day delay rendered the seizure unreasonable pursuant to White.  The Commonwealth sought and obtained interlocutory review pursuant to Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017).  The appeal was entered in the Appeals Court and later transferred to this court on our own motion.

2.  Diaz.  a.  Facts.  From the summer of 2018 to March 2019, Diaz served as the foster parent of two minor children,

---

[6] The Commonwealth subsequently nol prossed the District Court charges.

twelve year old Amanda[7] and eleven year old Betty,[8] who resided with him in his home during that period.

In June 2019, Amanda disclosed to her biological mother that Diaz had sexually abused her and that she had observed similar abuse of Betty.  Law enforcement thereafter conducted forensic interviews of both children, which were attended by D'Alba of the Chelsea police department.

During her forensic interview on July 16, 2019, Amanda reported that Diaz sexually assaulted her daily while she lived in his home.  She further reported that the abuse continued after she was removed from the home.  Diaz would communicate with Amanda via cell phone, coordinating meetings with her before school, during which time he would rape her.  Amanda informed the interviewer that Diaz had photographed her with his cell phone, but she could not recall whether she was dressed or undressed at the time.

Two days later, Betty participated in a separate forensic interview.  Betty likewise reported that Diaz sexually abused her during the same general time frame.  Betty further reported that Diaz had used his cell phone to show her an image of him

---

[7] A pseudonym.

[8] A pseudonym.

and his wife engaging in oral sex.  Betty confirmed that she had seen Diaz sexually abuse Amanda.

Based on these interviews, on July 18, 2019, D'Alba applied for and obtained an arrest warrant from the Chelsea District Court charging Diaz with several offenses, including dissemination of matter harmful to a minor, in violation of G. L. c. 272, § 28.  Later that day, officers contacted Diaz on his cell phone and arranged to meet him at a public location, where they arrested him pursuant to the warrant.  At the time of his arrest, the defendant possessed a cell phone -- an iPhone 6S in a distinctive black and copper case with a plastic disk affixed to the back bearing a United States Army emblem. Officers seized the device incident to the arrest as it was believed to be "the device that was used to display the harmful matter to [Betty]" and because it "contain[ed] evidence that may be related to [Diaz's] offenses."

About two weeks after Diaz's arrest, in August 2019, D'Alba learned that Diaz's wife may have also sexually assaulted Betty. Betty then participated in a second forensic interview, during which she described an incident in which Diaz used his cell phone's flashlight while photographing her with her shirt lifted.

Before applying for a warrant to search Diaz's cell phone, D'Alba prioritized other responsibilities, managing

approximately eighty open sexual assault and child abuse investigations, while placing the search warrant application on the "back burner." Once he turned his attention to the application, however, D'Alba devoted four or five eight-hour shifts to writing the twenty-seven page affidavit in support of the search warrant application. In preparing the search warrant affidavit, D'Alba relied on not only the victims' forensic interviews, but also the August 2018 and February 2019 investigations by the Department of Children and Families (DCF) into allegations that Diaz had inappropriately touched Amanda.

On November 18, 2019, 123 days after the seizure of the cell phone, D'Alba applied for and obtained a search warrant authorizing the search of Diaz's cell phone. Executing the search warrant, police recovered a photograph of the defendant and his wife engaged in oral sex, photographs of Amanda in a partial state of undress, a photograph of an "unidentified child with a penis penetrating the child's mouth," and two photographs of Betty naked.

b. Procedural history. In July 2019, a criminal complaint issued from the Chelsea District Court, charging Diaz with, among other things, one count of dissemination of matter harmful to a minor, G. L. c. 272, § 28.

On December 19, 2019, a grand jury returned thirteen indictments against Diaz charging him with four counts of rape

of a child between the ages of twelve and sixteen, aggravated by a more than ten-year age difference, G. L. c. 265, § 23A (b); six counts of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B; one count of distribution of material depicting a child engaged in a sexual act, G. L. c. 272, § 29B (b); one count of posing or exhibiting a child in a state of nudity, G. L. c. 272, § 29A (a); and one count of possession of child pornography, G. L. c. 272, § 29C.[9]

In October 2022, Diaz moved to suppress evidence obtained from his cell phone. Following an evidentiary hearing, a Superior Court judge (Diaz's motion judge) allowed the motion, concluding that D'Alba's 123-day delay in seeking a search warrant rendered the cell phone's continued seizure unreasonable pursuant to White. The Commonwealth obtained leave to pursue an interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2), and the case was entered in the Appeals Court.

In a divided decision, the Appeals Court affirmed. See Commonwealth v. Diaz, 105 Mass. App. Ct. 809, 822 (2025). We granted the Commonwealth's application for further appellate review.

---

[9] After the warrant to search Diaz's cell phone had been executed, the District Court charges against Diaz were dismissed by request of the Commonwealth.

Discussion.  In reviewing a ruling on a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error and defer to the judge's credibility determinations. Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 306 (2010).  Our review of the ultimate findings and conclusions of law is conducted independently.  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

Neither defendant disputes that the police lawfully seized his cell phone incident to arrest.  The contested question is whether the delay in seeking a search warrant rendered the initially lawful seizure unreasonable.  The Commonwealth contends that the motion judges misread White and that the police were not required to "diligently obtain" a warrant when the device itself was evidence of the crime.

1.  Balancing test.  Article 14 guarantees that "[e]very subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."  A seizure that is "reasonable at its inception . . . may become unreasonable as a result of its duration" (citation omitted).  White, 475 Mass. at 593.

To assess whether a delay in seeking a warrant to search a cell phone has crossed that line, we balance "the nature and quality of the intrusion on the individual's [possessory] interests against the importance of the governmental interests

alleged to justify the intrusion." White, 475 Mass. at 593-594, quoting Place, 462 U.S. at 703. The inquiry turns on the totality of the circumstances. See United States v. Laist, 702 F.3d 608, 613 (11th Cir. 2012).

In White, 475 Mass. at 593-595, we applied this balancing framework to a sixty-eight day delay between the seizure of a cell phone and the application for a warrant to search it. Because the motion judges relied on White in allowing the defendants' motions, we briefly describe the facts underlying that decision before turning to the materially different records before us.

In White, the police were investigating an armed robbery and shooting. Id. at 584. Three days after the incident, one of the defendant's high school administrators confiscated his cell phone under school policy. Id. at 585-586. Later that same day, the police took the cell phone from the school. Id. at 586. Although the police suspected that the defendant was involved in the robbery and had used the cell phone to coordinate with his suspected coventurers, they did not apply for a search warrant until sixty-eight days after they seized the device. Id. at 584, 590.

The reasonableness analysis in White rested on several related factors. Although the police lacked probable cause to seize the cell phone, we assumed probable cause for purposes of

evaluating the delay.  See id. at 584-585 ("We conclude that . . . the seizure here was not supported by probable cause.  We separately conclude also that, in these circumstances, the Commonwealth has not, in any event, met its burden of demonstrating" that delay in seeking search warrant was reasonable [emphasis added]).  The police also failed to treat the warrant application as a priority.  See id. at 594.  Additionally, the Commonwealth offered no warrant-specific justification for the sixty-eight day delay regarding either the complexity of the investigation or the demands of the application.  See id. at 594-595.  Taken together, those circumstances left the Commonwealth with a minimal interest in retaining the device, one that could not justify the substantial delay, which "affects [not] only the person's possessory interest[], but also the ability of the judiciary promptly [to] evaluat[e] and correct[] improper seizures" (quotations and citation omitted).  Id. at 595.

The fact that the delays here exceed the sixty-eight day delay in White does not determine the outcome.  See White, 475 Mass. at 593 ("no bright line past which a delay becomes unreasonable" [citation omitted]).  See also Laist, 702 F.3d at 614 (cautioning that, given fact-intensive nature of inquiry, it is "unwise to establish a duration beyond which a seizure is definitively unreasonable or . . . even presumptively

unreasonable"). These cases differ from White in material respects. Unlike in White, supra at 592, the police here had probable cause to seize the devices, and the devices had evidentiary significance apart from the data they might contain. See Cruzado, 480 Mass. at 284 (distinguishing White based on existence of probable cause to seize). See also Commonwealth v. Arthur, 94 Mass. App. Ct. 161, 165-166 (2018) (distinguishing White based on, among other things, independent evidentiary value of seized devices). The question remains whether, under the totality of the circumstances, each defendant's possessory interest outweighs the Commonwealth's justification for continuing to retain his cell phone.

With White properly framed, we turn to the three considerations that guide the balancing inquiry here: the defendants' possessory interest in the seized cell phones, the extent of the governmental intrusion on that interest, and the strength of the Commonwealth's justification for continuing to retain the devices.

a. Possessory interest. When examining a defendant's interest in a cell phone that has been subject to a delayed search, we specifically consider his or her possessory interest. See Cruzado, 480 Mass. at 284 ("Judged against the defendant's minimal possessory interest, the governmental interests

justified a ten-day delay" [emphasis added]).[10] Cell phones, like computers, may implicate a substantial possessory interest. See Laist, 702 F.3d at 614 (persons may have powerful possessory interest in computers). See also Commonwealth v. Phifer, 463 Mass. 790, 797 (2012) ("today's cellular telephones are essentially computers"). They often store a wide range of personal information, including communications, financial data, location data, and photographs. See Riley v. California, 573 U.S. 373, 396 (2014) ("Historic location information is a standard feature on many smart phones" and can "reveal where a person has been"); United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009). There is a significant likelihood that

---

[10] This approach is consistent with the analysis applied under the Fourth Amendment to the United States Constitution by multiple United States Circuit Courts of Appeals. See, e.g., United States v. Mays, 993 F.3d 607, 617 (8th Cir. 2021) ("On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest . . ."); United States v. Smith, 967 F.3d 198, 206 n.1 (2d Cir. 2020) (acknowledging that other United States Circuit Courts of Appeals use "similar relevant factors" to also "balance the individual's possessory interest against the government's continuing interest in retaining the property for investigation or prosecution"); United States v. Pratt, 915 F.3d 266, 271 (4th Cir. 2019) ("To determine if an extended seizure violates the Fourth Amendment, we balance the government's interest in the seizure against the individual's possessory interest in the object seized"); United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir.), cert. denied, 568 U.S. 852 (2012) ("On the individual person's side of this balance, the critical question relates to any possessory interest in the seized object, not to privacy or liberty interests").

"much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity." United States v. Smith, 967 F.3d 198, 207 (2d Cir. 2020). As a result, a person's possessory interest in certain personal electronic devices, like the "smart" cell phones (smartphones) here,[11] is different in kind from the possessory interests one may have in other personal belongings. See id. at 208 ("vital" consideration to assessing importance of seized property of defendant that personal electronic devices "implicate[] different privacy and possessory concerns" from other personal property). See also Riley, supra at 393 (argument that search of data on cell phone is materially indistinguishable from search of physical items is "like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together").

While a person's possessory interest in a smartphone generally may be substantial, in determining the reasonableness of a delay, we must examine the circumstances of each case. See Smith, 967 F.3d at 208 ("Notwithstanding the distinctive

---

[11] A smartphone can make telephone calls, send text messages, operate as both a camera and video recorder, operate various applications, and connect to the Internet. Commonwealth v. Dorelas, 473 Mass. 496, 497 n.1 (2016).

qualities of [defendant's] tablet as a personal electronic device," facts demonstrated diminished importance of seized tablet to defendant, weighing in government's favor).  The record may show that the possessory interest is reduced. Relevant circumstances may include whether the defendant requested the cell phone's return; whether the record shows a defendant's concrete need for the device for work, family, financial, medical, or other daily obligations; the strength of the defendant's claim of ownership; whether officers permitted the defendant the opportunity to copy or remove personal content from the cell phone before the seizure; the defendant's ownership of another cell phone with equivalent functionality; and the defendant's admission that the cell phone contains illicit material.  See, e.g., Cruzado, 480 Mass. at 283-284 (strength of claim of ownership); Smith, 967 F.3d at 206, 208 (demonstrated importance of seized device and ownership of functionally equivalent device); United States v. Sullivan, 797 F.3d 623, 633-634 (9th Cir. 2015), cert. denied, 578 U.S. 1024 (2016) (failure to seek return of seized device); Laist, 702 F.3d at 616 (opportunity to copy contents and admission of illicit contents).

   b.  Significance of the intrusion.  After assessing a defendant's possessory interest in a cell phone, we determine the extent of the governmental intrusion, including the length

of delay and whether the defendant consented to the seizure. See Laist, 702 F.3d at 613-614; United States v. Stabile, 633 F.3d 219, 235 (3d Cir.), cert. denied, 565 U.S. 942 (2011) (no infringement of possessory interest where defendant consents to seizure).  Although the length of delay carries significant weight in our analysis, no bright-line rule defines when a delay becomes unreasonable.  See Cruzado, 480 Mass. at 283.  Indeed, courts have upheld delays of several months in some circumstances, while finding shorter delays unreasonable in others.  Compare, e.g., Arthur, 94 Mass. App. Ct. at 165-166 (eighty-five day delay reasonable), United States v. Burris, 22 F.4th 781, 785 (8th Cir. 2022) (eight months reasonable), United States v. Wells, 804 F. Supp. 3d 1000, 1009-1010 (D. Neb. 2025) (six months reasonable), and United States v. Blanchard, 544 F. Supp. 3d 166, 172 (D. Mass. 2021) (four months reasonable), with United States v. Pratt, 915 F.3d 266, 273 (4th Cir. 2019) (thirty-one days unreasonable), and Mitchell, 565 F.3d at 1353 (twenty-one days unreasonable).

c.  Government's interest.  We next identify the government's interest that justifies the continued seizure and weigh it against the intrusion on the defendant's possessory interest.  See White, 475 Mass. at 593-594.

In evaluating the government's interest, we consider various factors, including the basis for the seizure of the cell

phone;[12] the device's evidentiary value independent of its contents; the nature of the offense; the strength of the government's justification for the delay as demonstrated by the complexity of the investigation and the effort required to obtain a warrant; the use of secure storage to prevent remote destruction of evidence; and whether police acted diligently. See, e.g., Cruzado, 480 Mass. at 284 (nature of crime); White, 475 Mass. at 594 (diligence in obtaining warrant); United States v. Sykes, 65 F.4th 867, 879 (6th Cir. 2023), cert. denied, 144 S. Ct. 576 (2024) (secure storage of device); Burris, 22 F.4th at 785 (independent evidentiary value of device); United States v. Mays, 993 F.3d 607, 617-618 (8th Cir. 2021) (probable cause to seize and effort required to obtain warrant); Smith, 967 F.3d at 210-211 (strength of justification for delay); Laist, 702 F.3d at 617 (investigation's scope and complexity).

One factor -- independent evidentiary value -- has been treated by some Federal courts as effectively dispositive under the Fourth Amendment to the United States Constitution. See Burris, 22 F.4th at 785. See also Smith, 967 F.3d at 209 (acknowledging that if defendant's tablet had independent

---

[12] Because "[t]he [S]tate has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion," greater delays are tolerated after probable-cause seizures. Burgard, 675 F.3d at 1033.

evidentiary value, such value "would have justified the police's retention of the tablet without regard" to search warrant application). Under that approach, when a lawfully seized cell phone is evidence of the crime, any delay in obtaining a warrant to search its contents is considered "immaterial." Burris, supra. The rationale is straightforward. Because the government may retain the device itself as evidence for trial, its continued possession does not depend on what a search of the device's contents might reveal. A delay in searching the contents therefore does not postpone the owner's recovery of the device. By contrast, where a device has no evidentiary significance apart from its potential digital contents, "the government would be obligated to return" the device if the search "reveal[s] no such incriminating evidence." Mitchell, 565 F.3d at 1352.

We decline to adopt this categorical approach under art. 14. See Commonwealth v. Augustine, 467 Mass. 230, 244 (2014), S.C., 470 Mass. 837 and 472 Mass. 448 (2015) (art. 14 may afford greater substantive protection than Fourth Amendment). Such a rule would sweep too broadly, treating the police's burden to seek a warrant as fully discharged the moment a device qualifies as evidence. That premise is in tension with the central role that cell phones play in modern life. See Commonwealth v. Cronin, 495 Mass. 170, 180 (2025) (cell phones are

"ubiquitous"); Commonwealth v. Hobbs, 482 Mass. 538, 546 (2019) ("cell phones have become an indispensable part of daily life" [quotation and citation omitted]).  The longer a device sits in police custody, the longer its owner is deprived of access to records, communications, and tools on which daily life increasingly depends.  See United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir.), cert. denied, 568 U.S. 852 (2012).  That deprivation has constitutional weight, even where a judge ultimately determines that the Commonwealth has a substantial independent basis for retention, because avoidable delays disserve the judiciary's role in promptly "evaluat[ing] and correct[ing] improper seizures" when they do occur (citation omitted).  White, 475 Mass. at 595.  Accordingly, a cell phone's independent evidentiary value may substantially strengthen the Commonwealth's interest in retaining the device, but it does not excuse neglect, and it does not permit extended delay in every case.

2.  Application.  We now apply that balancing test to each case before us, starting with Solis's case.

a.  Solis.  i.  Possessory interest.  Solis's possessory interest was substantial at the outset because the seized item was a smartphone.  On this record, however, that interest was diminished in two respects.  First, the record offers no indication, and Solis does not contend, that he sought the

return of his cell phone.  See Sullivan, 797 F.3d at 633-634, quoting United States v. Johns, 469 U.S. 478, 487 (1985) (person who "never sought return of the property" had not made sufficient showing that delay was unreasonable).  See also Rule 61 of the Rules of the Superior Court (1980) (governing motions for return of property); United States v. Nkongho, 107 F.4th 373, 384 (4th Cir.), cert. denied, 145 S. Ct. 776 (2024) (defendant's possessory interest was "no doubt high" where, among other things, she and her attorney "contacted law enforcement to request that [her devices] be returned").  Second, the record contains no evidence that the cell phone held any "particular significance" to Solis.  Smith, 967 F.3d at 208 (defendant's testimony about use and significance of device was "spare in detail").  Contrast United States v. Eisenberg, 707 F. Supp. 3d 406, 415 (S.D.N.Y. 2023) (defendant showed particular significance by explaining his "extensive[]" use of devices to communicate with friends and to store "large amount of personal and business data" and that devices contained information for accessing funds).  Taken together, these considerations reduce, but do not eliminate, the weight of Solis's possessory interest.

ii.  Extent of intrusion.  Although Solis's possessory interest was diminished, "[p]ossessory interest is only one factor to be considered in the over-all reasonableness calculus."  White, 475 Mass. at 595.  We also consider the

extent of the government's intrusion on Solis's interest in the seized cell phone. The 109-day delay in Solis's case constitutes a significant intrusion on his possessory interest. See Laist, 702 F.3d at 616 (twenty-five day delay was "not insubstantial"). Solis did not consent to the initial seizure, which otherwise could have minimized or negated any intrusion on his possessory interest. See Sullivan, 797 F.3d at 634 ("minimal" interference with possessory interest where, among other things, defendant consented to ongoing seizure); Stabile, 633 F.3d at 235 (no infringement of possessory interest where defendant consented to seizure).[13]

iii. The government's interest in seizing and retaining Solis's cell phone. Several factors strongly support the government's interest. First, the police had probable cause to seize the cell phone, a "key factor" in the analysis (citation omitted). Mays, 993 F.3d at 617. At the time of Solis's arrest and the seizure of his cell phone, the police were aware of Charlie's report that Solis had used a cell phone to photograph Charlie's genitals during one of several sexual assaults. They were also aware that, according to Charlie, one of the incidents

---

[13] As neither defendant here consented to the initial seizure, we need not determine the exact impact consent may have on the "nature and quality of the intrusion" (citation omitted). White, 475 Mass. at 593-594.

occurred in a room in the store's basement containing a bed with a "bluish blanket." Charlie's account was corroborated by the officers' subsequent observation of a futon and "bluish blanket" in the store's basement. These facts established probable cause to seize Solis's cell phone.

Based on these same facts, the cell phone also had meaningful evidentiary value independent of its contents: it was allegedly used to commit the offense of posing a child in a state of nudity. See Burris, 22 F.4th at 785 (where cell phone had independent evidentiary value, eight-month delay was not unreasonable). That value did not depend on what a later search of the cell phone might reveal. A conviction under G. L. c. 272, § 29A (a), does not require proof that the photograph was successfully created, and the device itself may serve as corroborating evidence if successfully identified by the victim. See Commonwealth v. Bresilla, 470 Mass. 422, 430 (2015) (identification of tangible objects seen during crime by percipient witness provides "indirect evidence of the defendant's guilt"); Commonwealth v. Lawrence, 68 Mass. App. Ct. 103, 105 (2007) (violation of G. L. c. 272, § 29A [a], does not require successful creation of photograph).[14]

---

[14] We do not ignore the discrepancy between the blue Nokia smartphone in a black case seized from Solis and Charlie's later description of a gray or black Samsung cell phone. That discrepancy weakens the cell phone's independent evidentiary

The government's interest is further strengthened by the nature of the offense, which involves the sexual exploitation of a child, an area in which the Commonwealth's interest is "particularly strong."  Cruzado, 480 Mass. at 284.  Cf. Commonwealth v. Feliz, 486 Mass. 510, 517 (2020) ("Preventing sexual exploitation and abuse of children constitutes a government objective of surpassing importance" [quotation and citation omitted]).

Countervailing considerations diminish the weight of the government's interest.  The case was relatively straightforward, involving a single victim and a single defendant.  More importantly, the Commonwealth's justification for the delay reflects a lack of warrant-specific diligence.  Some initial delay could be attributed to the timing of the victim's forensic interview, but most of the remaining time was attributed to the

---

value.  It does not eliminate that value, however, because Charlie initially reported that Solis used the cell phone during the sexual assault, the seized cell phone matched the general color when covered with its case, and probable cause does not require certainty about identification at trial.  Cf. United States v. Smith, 9 F.3d 1007, 1014 (2d Cir. 1993) (minor inconsistencies in informant's description did not undermine probable cause); Ellis v. United States, 264 F.2d 372, 374 (D.C. Cir.), cert. denied, 359 U.S. 998 (1959) (probable cause existed where descriptions shared basic similarities and fairly matched suspect).  Moreover, because "tangible objects are typically not unique," Bresilla, 470 Mass. at 430, it is not necessarily fatal to the cell phone's independent evidentiary value that the cell phone was, as Solis's motion judge described it, "nondescript."

officer's general workload and the department's staffing constraints.  Generalized workloads do not excuse delay.  See White, 475 Mass. at 594.

The effort required to prepare the warrant application likewise does not justify the delay.  See Mays, 993 F.3d at 618. Although the affidavit spanned eighteen pages, only a limited portion contained case-specific facts.  Unlike more complex cases involving multiple agents or extended investigations, the affidavit here drew on a limited set of sources and did not require substantial investigative synthesis.  Contrast id. (eighteen-page affidavit supported reasonableness where affiant compiled specific information about defendant's alleged conduct from four separate investigative teams); Laist, 702 F.3d at 617 (three pages of information was "very substantial" where affiant compiled information from "numerous [Federal Bureau of Investigation] agents" related to year-long investigation).

The police did not act with the diligence that art. 14 demands.  Investigative workload alone cannot justify extended delay; the Commonwealth must identify warrant-specific reasons for the lapse.  See White, 475 Mass. at 594.  That said, lack of diligence does not end the inquiry where other circumstances provide a continuing, case-specific basis to retain the device. See Cruzado, 480 Mass. at 283 n.9.  Cf. Asinor v. District of Columbia, 111 F.4th 1249, 1260 (D.C. Cir. 2024) (government "can

reasonably retain contraband or evidence in an ongoing criminal investigation or trial").  The point is not that diligence becomes optional.  It is that the absence of diligence must be weighed with the remaining facts.

iv.  Balancing the interests.  On this record, the 109-day delay did not render the seizure of Solis's cell phone unreasonable.  This conclusion rests on the combined force of several factors, not on any single factor.  The police had probable cause to believe that the device was an instrumentality of a serious felony involving child sexual abuse; the cell phone carried meaningful evidentiary value independent of its contents, particularly where Charlie could identify it at trial, subject to the discrepancy in his later description; Solis never sought the device's return; and Solis offered no evidence that it held any particular significance to him.  Although the Commonwealth's interest was tempered by the lack of diligence, it remained substantial.  The continued seizure was therefore reasonable.

b.  Diaz.  i.  Possessory interest.  Diaz's possessory interest was substantial at the outset for the same reason:  the seized item was a smartphone.  Like Solis, however, Diaz did not request the return of his cell phone, which reduces the weight of his possessory claim, but does not defeat it.  See Sullivan, 797 F.3d at 633.  Diaz also failed to present any evidence that

the cell phone held any particular importance to him.  See Smith, 967 F.3d at 208.  Contrast Eisenberg, 707 F. Supp. 3d at 415.  As in Solis's case, Diaz's possessory interest, while real, carries reduced weight in the balance.

ii.  Extent of intrusion.  The 123-day delay in Diaz's case constitutes a substantial intrusion on his possessory interest. See Laist, 702 F.3d at 616.  As with Solis, Diaz did not consent to the seizure of his cell phone.  See Sullivan, 797 F.3d at 634; Stabile, 633 F.3d at 235.

iii.  The government's interest in seizing and retaining Diaz's cell phone.  Here, the government's interest in Diaz's cell phone was also substantial, particularly at the time of the initial seizure.  The police had probable cause to seize Diaz's cell phone incident to his arrest -- again, a "key factor" in the analysis (citation omitted).  Mays, 993 F.3d at 617.  See Cruzado, 480 Mass. at 284.  Diaz argues, however, that because it is "common for an individual to carry two or more [cell] phones," it was unreasonable to infer that the device seized incident to his arrest was the same one used in the alleged offenses, particularly in the absence of any description of the cell phone from the victims.  See United States v. Fletcher, 978 F.3d 1009, 1016-1017 (6th Cir. 2020) ("possessing more than one cell phone is a practice common in the general public").  As a

result, Diaz contends, the seized cell phone cannot have any evidentiary value independent of its contents.  We disagree.

Diaz was arrested for, among other things, dissemination of matter harmful to a minor, in violation of G. L. c. 272, § 28. At the time of his arrest, the police were aware from forensic interviews that Diaz had used his cell phone to display to Betty a sexually explicit photograph of himself and his wife. Immediately before the arrest, D'Alba called Diaz on his cell phone and asked him to come outside; Diaz did so, holding a cell phone in his hand.

In these circumstances, it was reasonable to infer that the seized cell phone was the same device used in the crime of arrest.  Although the police lacked a specific description of the cell phone, they could rely on "normal inferences" regarding where the at-issue cell phone might have been found (citation omitted).  White, 475 Mass. at 589.  Those inferences were especially strong here because D'Alba called Diaz on his cell phone immediately before the arrest, Diaz came outside in response to that call, and Diaz was holding a cell phone when officers arrested him.  See Augustine, 467 Mass. at 246 (cell phones "physically accompany their users everywhere -- almost permanent attachments to their bodies").  Cf. Commonwealth v. James, 424 Mass. 770, 777-778 (1997) (probable cause supported belief that instrumentalities of crime were located within

defendants' homes where items were "durable, of continuing utility to the defendants, and . . . not inherently incriminating to possess").

The general possibility that Diaz possessed several cell phones does not defeat probable cause. Probable cause "deal[s] with probabilities," not certainties, and does not require proof "beyond a reasonable doubt" that the seized device was the one used in the crimes (citation omitted). Commonwealth v. Kaupp, 453 Mass. 102, 110-111 (2009). The facts known to the police at the time of arrest provided probable cause to believe that the seized cell phone was an instrumentality of the dissemination offense for which Diaz was arrested. Consequently, the seized cell phone also had significant evidentiary value independent of its contents. See Burris, 22 F.4th at 785. Diaz's purported use of the cell phone as the instrumentality by which he disseminated matter harmful to a child carries particular weight given that a conviction under G. L. c. 272, § 28, does not require the Commonwealth to produce the offending material itself. See Ferrari v. Commonwealth, 448 Mass. 163, 169 (2007) (holding evidence was sufficient to convict under G. L. c. 272, § 28, where Commonwealth relied solely on child's testimony as to entire contents of "porn" videotapes she personally observed). The government's interest is further strengthened by

the nature of the offenses, which involve the sexual exploitation of children.  See Feliz, 486 Mass. at 517.

Additionally, the cell phone acquired further independent evidentiary value after its seizure.[15]  In a subsequent forensic interview, Betty reported that Diaz had used his cell phone to photograph her while her shirt was lifted.  The device itself thus became evidence of two offenses, dissemination and posing, further strengthening the governmental interest in retaining it.  See Burris, 22 F.4th at 785.  Also, the police reasonably could infer from the forensic interviews that the victims would be able to identify the device at trial, thereby corroborating their allegations and providing circumstantial evidence of Diaz's guilt.  See Bresilla, 470 Mass. at 430.

D'Alba's admission that the warrant application was placed "on the back burner" directly contravenes the requirement that warrant applications for digital devices be prioritized, see White, 475 Mass. at 593, and weighs against the Commonwealth's interest.  The police investigation, however, was more complex than in Solis's case.  It spanned nearly half a year, involved

---

[15] We may consider these developments because the police did not obtain this information as a result of the continued seizure of the cell phone.  See Commonwealth v. Oliveira, 474 Mass. 10, 16 (2016) (seizure "cannot be justified by information learned from the seizure").

multiple victims, and drew on information from several sources, including prior related DCF investigations and multiple forensic interviews.  That complexity bears on the time reasonably required to prepare a warrant application.  See Laist, 702 F.3d at 617.

The effort required to prepare the affidavit likewise supports the Commonwealth's interest.  See Mays, 993 F.3d at 617.  D'Alba's twenty-seven page affidavit included extensive, case-specific information drawn from multiple investigations and agencies.  Unlike in Solis's case, the affidavit here reflected a substantial synthesis of evidence developed over an extended period.  See id.; Laist, 702 F.3d at 617.  D'Alba's testimony that he devoted four or five eight-hours shifts to drafting the application is consistent with the scope of the investigation and does not reflect undue delay.  See Laist, supra at 614.

iv.  Balancing the interests.  In Diaz's case, the 123-day delay did not render the seizure of Diaz's cell phone unreasonable.  The device was not merely a repository of evidence.  It was allegedly used as an instrumentality of offenses involving the sexual abuse of children, and its evidentiary significance -- independent of its contents -- was present at the time of seizure and grew with subsequent investigative developments.  Diaz's possessory interest was also diminished, both by his failure to seek the return of the device

and by the absence of any record evidence that the cell phone was important to him. These facts do not make the length of the delay immaterial. They do, however, give the Commonwealth a continuing case-specific basis to retain the device while the warrant application was prepared, which, in turn, acts as a countervailing consideration to the length of the delay.

The delay in seeking the warrant exceeded the delay in Solis's case, and, by D'Alba's own admission, the warrant application was not prioritized. The lack of prioritization is serious and weighs against the reasonableness of the delay. Still, "we have never said that [diligence] is a dispositive factor." Cruzado, 480 Mass. at 283 n.9. Here, the delay is mitigated by the greater complexity of the investigation, the substantial effort required to prepare the twenty-seven page affidavit (including the synthesis of information from multiple forensic interviews and prior investigations), and, importantly, the device's continuing evidentiary value in relation to the charged offenses. On balance, the Commonwealth's interest outweighed the intrusion on Diaz's possessory interest.

Conclusion. The motion judges erred in concluding that the delays in seeking warrants rendered the seizures unreasonable. The orders allowing the motions to suppress are reversed, and the matters are remanded to the Superior Court.

Nothing in this opinion should be read to condone delay. Article 14 requires that applications for warrants to search digital devices be treated as a priority, not as an afterthought.  Our holding is narrow, and rests on the combination of probable cause, a continuing evidentiary basis for retaining the cell phones apart from their contents, serious offenses involving child sexual exploitation, and diminished possessory interests.

<u>So ordered</u>.